[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR CONTEMPT — THE DEFENSE OF ESTOPPEL
The parties were divorced on November 19, 1984. In that proceeding, the plaintiff, ex-husband, was granted custody of their three minor children. The defendant, ex-wife, was granted reasonable visitation rights. Also, the court ordered the defendant to pay child support of $25.00 per child per week.
In late July or early August 1985, the plaintiff and the defendant agreed that the defendant would raise the oldest minor child (age 12), the defendant would raise the other two minor children, and neither party would pay child support. The defendant testified that she would have been unable to both raise the oldest minor child and pay child support to the plaintiff.
On July 29, 1991, the plaintiff filed a Motion For Contempt against the defendant because of the defendant's failure to pay child support between 1985 and 1991. The plaintiff testified that shortly after the agreement was made with the defendant, the defendant changed her residence and failed to contact the plaintiff in any way. Thus, the plaintiff was unable to contact the defendant and address the issue of the child support arrearage which the parties agreed in court amounted to $14,350.00. A decision on the issue of contempt was reserved for a later hearing At the conclusion of the hearing, each party was requested to provide a brief as to how the court should rule on its findings. The plaintiff seeks enforcement of the 1984 child support order despite the 1985 agreement between the parties.
Plaintiff's Claims In Support Of Motion For Contempt
The plaintiff, claims that (1) the minor children's right to support is independent of any agreement between their parents and cannot be contracted away, (2) private agreements cannot modify court orders, and (3) the defendant, has not proven an equitable defense. These claims will be addressed seriatim.
Children have an independent right to parental support. Lownds v. Lownds, 41 Conn. Sup. 100, 105, 551 A.2d 775 (1988) (citing Burke v. Burke, 137 Conn. 74, 80 (1950)). Guille v. Guille, 196 Conn. 260, 491 A.2d 175 (1985) illustrates why children maintain this independent right. In Guille, the defendant father and the plaintiff mother entered into a stipulation that alimony and child support could not be modified by the court in the future. Id. at 261. The court in Guille found
 [a]lthough the . . . stipulation and judgment may have been effective to define permanently the support obligations of the divorcing parties as between themselves, neither their agreement nor the court's decree can be held binding as to their minor children, who were unrepresented CT Page 5927 during both the negotiation of the stipulation and the dissolution proceedings. Since the stipulation is merely a contract between the defendant husband and the plaintiff wife, it could not affect the minor children's right of action for parental maintenance.
Id. at 267. But, Guille is different factually from the case at hand because in Guille the children did not change residence. In the case at bar, it was the change of residence by the eldest child that was essential to the agreement between the parties to alter the support arrangement. The Court finds that the parties agreed to change the court ordered support because the parties recognized that the defendant could not simultaneously raise the eldest child and pay support to the plaintiff. Even though the case at bar and Guille are different factually, however, the principle in Guille regarding the right of all persons directly concerned in a matter to have an opportunity to be heard still binds this court.
 "It is a fundamental premise of due process that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved."
Guille, at 268, (quoting Costello v. Costello, 186 Conn. 773, 776-77,443 A.2d 1282 (1982)). Hence, it is appropriate for counsel to be appointed for the two minor children in order to determine if the agreement between the parties fairly accommodated the minor children's right to parental support. The eldest child is no longer a minor, so he must obtain his own counsel if he chooses to pursue the issue of support from his father.
The plaintiff uses Connecticut General Statutes 46b-66 and46b-86 to support his second contention that private agreements cannot modify court orders. Connecticut General Statutes 46b-66
reads in pertinent part that: "[i]f the court finds the agreement fair and equitable, it shall become part of the court file. . . ." This language implies that an agreement's incorporation into a decree is subject to approval by the court. Section 46b-86 reads in pertinent part that "any final order for the periodic payment of permanent alimony or support . . . may . . . be modified by said court upon a showing of a substantial change in . . . circumstances. . . ." Section 46b-86 requires that such a "showing" be made to the court if an order is to be modified. The plaintiff is correct in using Brock v. Cavanaugh, 1 Conn. App. 138, 468 A.2d 1242 (1984) to support his reading of Connecticut General Statutes 46b-86. "[A] support order can only be modified by the court". Id. at 141. CT Page 5928 Hence, it is true that private agreements cannot modify court orders. However, if the defenses of laches, waiver or equitable estoppel can be proven, the defendant will prevail. Lownds v. Lownds, 41 Conn. Sup. 100, 106, 551 A.2d 775 (1988).
The plaintiff's third claim is that the defendant cannot validly assert laches, waiver or estoppel as equitable defenses.
 "Laches consists of two elements. First there must have been a measurable delay by one party, and second, that delay must have prejudiced the other party. The mere lapse of time does not constitute laches unless it resulted in prejudice to the plaintiff, as where, for example, the plaintiff was led to change his position with respect to the matter in question."
Id. at 107 (citing Papcun v. Papcun, 181 Conn. 618, 436 A.2d 282
(1980); Bozzi v. Bozzi, 177 Conn. 232, 413 A.2d 834 (1979); Breck v. Cavanaugh, 1 Conn. App. 138, 468 A.2d 1242 (1984). The lapse of time in the case at bar occurred between 1985 and 1991. This five year delay is not, by itself, "inexcusable" because the court in Bozzi held that the fact that the parties had not communicated in eight years was insufficient by itself to be a valid defense. Bozzi, supra, at 240. Also, the lapse of time in the case at bar could not have been prevented because, according to the plaintiff's testimony, the plaintiff did not know of the defendant's whereabouts. The lapse of time is excusable. Hence, a laches defense cannot be validly asserted.
"Waiver is the intentional relinquishment of a known right." Lownds, supra, at 107. The Court in Lownds reviewed an argument that waiver exists when there is a long-term acceptance by a recipient party of a deviation from a court order and found the argument unpersuasive where the provider party's unknown whereabouts prevented the recipient party from having an opportunity to protest the "acceptance". In the case at hand, an agreement concerning support was made by the parties but, again, according to the plaintiff's testimony, the plaintiff was unaware of the defendant's whereabouts, preventing the plaintiff from "tak[ing] action to protest." Hence, the plaintiff is correct in asserting that no valid waiver claim exists.
The plaintiff is not correct in asserting that the defendant does not have a valid claim of equitable estoppel.
 "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in CT Page 5929 equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse."
(3 Pomeroy, Equity Jurisprudence, 5th Edition, 1941, 804, p. 189: Bozzi v. Bozzi, 177 Conn. 232 (1979).
Bozzi clarified this definition of estoppel by stating that:
 "[i]ts two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his position or do some act to his injury which he otherwise would not have done."
Bozzi, supra, at 242 (citing Dickan v. Glastonbury, 156 Conn. 437,441, 242 A.2d 777 (1968). In Bozzi, the Connecticut Supreme Court affirmed the trial court's finding that the defendant, ex-husband, had not relied on the plaintiff's temporary non-enforcement of the child support order. In the case at bar, however, the two elements of estoppel outlined in Bozzi are satisfied. First, the plaintiff induced the defendant into believing that the plaintiff would raise two of the children, the defendant would raise the eldest child and neither party would be responsible for paying support to the other. Secondly, the defendant was influenced by this inducement in that she raised the eldest child which clearly changed her position.
Moreover, the defendant, relying upon this agreement, abandoned any resort to the court between 1985 and 1991 for its determination of any other appropriate level of her obligation for child support.
The defendant correctly refers to Kellogg v. Kellogg,7 CSCR 55 (January 13, 1992), to support her contention that the plaintiff is estopped from asserting a right to support. In Kellogg, the defendant, ex-wife, moved that the plaintiff, ex-husband, be found in contempt for failure to pay support. The court held that the plaintiff was not responsible for the support payments not made when the minor child was living with the plaintiff because "the plaintiff undertook the day-to-day maintenance of [the minor child] in reliance upon his understanding that he would not have to pay child support so long as the child was with him." Id. In the case at hand, the defendant's reliance on the plaintiff's inducement resulted in a CT Page 5930 change in position similar to the plaintiff's change of position in Kellogg.
The plaintiff claims that Kellogg is distinguishable from the case at bar. The plaintiff points to the fact that the child for which back support was claimed in Kellogg changed residence from the payee spouse to the payor spouse while two of the three children for which back support is claimed in the case at hand continuously resided with the plaintiff, payee, throughout the disputed period. This distinction, however, is not relevant. In both cases the original support ordered by the court was no longer appropriate after the changes in residence. Evidence that the parties in each case recognized this situation is contained in the agreements that the court found were made. Hence, the relevancy of Kellogg to the case at hand is that the agreement was made in each case to maintain a fair financial arrangement between the respective parties pursuant to the changes in residence, and that the agreement to do so was relied upon.
The plaintiff also attempts to distinguish Kellogg from the case at bar by noting that the payee spouse in Kellogg delayed pursuing a Motion For Contempt for seventeen months while she had the ability to seek such remedy and in the instant case the payee had no knowledge of the whereabouts of the payor and subsequently was unable to take action in court. The plaintiff's distinction is relevant for discussion of laches and waiver, not equitable estoppel. The plaintiff voluntarily made a representation to the defendant regarding the payment of support. The plaintiff's not knowing of the defendant's whereabouts does not negate that representation.
For the foregoing reasons, the plaintiff is estopped from asserting any rights to support while the eldest child was living with the defendant. Accordingly, the motion for contempt is denied.[1]
Clarance J. Jones, Judge